```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
                       CENTRAL DIVISION at LEXINGTON
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 5:13-cv-279-JMH |
| ) | |
| WOODLAND DREAM, et al., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |
| ) | |
| ) | |

\*\*\*

This matter is before the Court upon Claimants Richard Banks and Travis Banks' Motion to Appeal the Order of the Magistrate Judge to sell the mare Woodland Dream. [D.E. 13]. The United States filed a Response to the motion. [D.E. 14]. This matter having been heard for argument on October 18, 2013, and the Court being otherwise sufficiently advised, this matter is now ripe for review.

**I. Procedural Background**

This matter arose in a preliminary forfeiture action before Magistrate Judge Wier. *See United States v. Johnston*, 5:13-mj-5181-REW. Magistrate Judge Wier granted Plaintiff's motion for a pre-indictment temporary restraining order. [D.E. 12 at 1]. Plaintiff then moved for a ninety-day extension of the temporary restraining order. *Id.* Magistrate Judge Wier construed this motion as a motion to convert the temporary restraining order

into an injunction under 21 U.S.C. § 853(e)(1), and granted Plaintiff's motion. [D.E. 12 at 2].

Magistrate Judge Wier then scheduled an evidentiary hearing, which took place over two days, to allow the parties to present evidence on the issue of whether the mare Woodland Dream should be sold. [D.E. 12 at 2, 19, 20]. After considering the evidence presented at the hearing, Judge Wier issued an order recommending that Woodland Dream be sold based on the risks to her value and the specialized costs of upkeep attributable to this mare. [D.E. 12]. Specifically, Judge Wier stated:

> there is a substantial risk that Woodland Dream's value will diminish significantly if she is not sold at this time, thereby rendering her current value, effectively unavailable for forfeiture. Pregnancy, foaling risks, and age threaten the mare's worth. Accruing and unpaid expenses dilute any owner's equity in the mare. The horse plainly is perishable and in danger of diminished value. A sale now preserves her current value against the indeterminacy of future risks and the assured equity loss from upkeep of this worrisome mare. There is good cause to sell the mare, premised on the nature of the asset, her peculiar history and properties, and timely access to a location sure to offer the most efficient and knowledgeable of marketplaces for property of this type, Keeneland.

[D.E. 12 at 17]. Judge Wier further directed that any appeal of his decision should be made to this Court, based upon the pendency of a related civil forfeiture in rem action before this Court. *Id.* at 18.

2

The Banks' then filed their motion appealing Judge Wier's order to sale the mare Woodland Dream. Because the United States is requesting injunctive relief under 21 U.S.C. § 853(e)(1), the Court entered an order treating Judge Wier's order as a report and recommendation and the Banks' motion as an objection to the report and recommendation. *See* 28 U.S.C. § 636(b)(1); [D.E. 5]. Additionally, because Woodland Dream is also subject to forfeiture in the forfeiture in rem action before this Court, the Court also ordered that all future filings be made in that action. [D.E. 5]. Thus, the Banks' Motion for Reconsideration was submitted to this Court and the Government filed its Response. The Court held a hearing on the motion on October 18, 2013 in Lexington, Kentucky.

In their Motion to Reconsider, the Banks make four objections to Judge Wier's report and recommendation. The Banks' argue (1) that there is no legal precedent for a pre-indictment interlocutory sale of an asset subject to forfeiture; (2) that the Government did not show a substantial likelihood that the property would decrease in value or that the cost of maintenance of the property exceeded its value; (3) that Magistrate Judge Wier improperly relied on the filing of a civil forfeiture in rem action; and (4) that Magistrate Judge Wier's reliance on the testimony of FBI Agent Moutz's testimony given at the evidentiary hearing was inappropriate.

3

**II. Standard of Review**

Pursuant to this Court's Order of September 26, 2013, this matter is before the Court upon the Banks' motion for reconsideration of Magistrate Judge Wier's report and recommendation to order the sale of the mare Woodland Dream. *See* [D.E. 5]; 28 U.S.C. § 636(b)(1). In reviewing Magistrate Judge Wier's recommendation to sale Woodland Dream, this Court must make a de novo review of those portions of the report to which the Banks object. *See* 28 U.S.C. § 636(b)(1)(C). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by" Magistrate Judge Wier. *Id.*

In performing a de novo review, because the Government's motion was made pursuant to § 853(e), the Court must apply the standards found in § 853(e) to determine if action is warranted in this matter.

> Upon application of the United States, the court may . . . take any other action to preserve the availability of property [subject to] forfeiture under this section . . . prior to the filing of such an indictment or information, if . . . the court determines that (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

21 U.S.C. § 853(e)(1)(B).

4

**III. Analysis**

In reviewing Judge Wier's determination de novo, *see* 28 U.S.C. § 636(b)(1), this Court must determine (1) whether § 853(e) grants the authority to order an interlocutory sale of property pre-indictment and (2) if it does, whether the sale of the property is appropriate under the circumstances presented by this case. The authority for entering the interlocutory sale must be found in § 853(e) because no motion has been made in the civil forfeiture in rem action requesting a sale under Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The Banks' argue that there is no legal precedent for entering an interlocutory sale in a pre-indictment case. [D.E. 13 at 3]. However, the Banks cite no legal precedent holding that an interlocutory sale is not allowed in a pre-indictment case. Judge Wier explicitly addressed this issue in his report and recommendation. Judge Wier stated that "[t]he authority granted by § 853(e)(1) to take 'any other action' to preserve the availability of property subject to forfeiture applies equally, as a plain matter of the statute's text and structure, during the pre- and post-indictment stages." [D.E. 12 at 11].

The Court agrees with Judge Wier's reading of the statute and finds support for this reading in case law from other jurisdictions. Our sister court in the District of Maryland

5

found that the rules of § 853(e) "apply equally to pre-indictment orders issued under Section 853(e)(1)(B) and post-indictment orders issued under Section 853(e)(1)(A)." *In re Pre-Indictment Restraining Order*, 816 F. Supp. 2d 240, 244 (D. Md. 2011). In a post-indictment case, the District Court of Massachusetts entered the interlocutory sale of a home because "the equity in the property available to the government in the event forfeiture is ordered continues to diminish." *United States v. Gianelli*, 594 F. Supp. 2d 148, 150 (D. Mass. 2009). The court found that § 853(e)(1) authorized this sale because it gave the court authority to "take any action to preserve the availability of property." *Id.* (quoting 21 U.S.C. § 853(e)(1)); *see also United States v. Boscarino*, No. CR 12-1942-TUC-CKJ, 2012 WL 254129, at *1 (D. Ariz. Jan. 27, 2012) (finding that § 853(e)(1) provides authority to enter interlocutory sale of property); *In re Pre-Indictment Restraining Order*, 816 F. Supp. 2d at 244 ("The court's authority under Section 853(e) is not limited to enjoining a person from dissipating forfeitable assets."); *United States v. King*, No. 10 Cr. 122, 2010 WL 4739791, at *3 (S.D.N.Y. Nov. 12, 2010) (ordering the interlocutory sale of horses because the expense in keeping them was excessive and disproportionate to their fair market value). Thus, if the rules of § 853(e) apply equally pre- and post-indictment and if interlocutory sale is permitted post-

indictment, it follows that § 853(e) grants the authority to order the pre-indictment interlocutory sale of forfeitable assets.

Having found authority to enter the interlocutory sale of the assets within § 853(e), the Court must determine whether the circumstances in this case meet the standards provided by § 853(e). To take action under § 853(e)(1)(B), the court must determine that

> (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

21 U.S.C. § 853(e)(1)(B).

The Court, having reviewed the affidavit of FBI Agent Moutz [D.E. 1-2], finds that there is a substantial probability that the United States will prevail on the issue of forfeiture. Additionally, there was testimony presented at the evidentiary hearing suggesting that Seth Johnston owns Woodland Dream. Specifically, Dr. Jennifer Smallwood contacted Mr. Johnston with findings from a necropsy report [D.E. 19 at 38], Sharon Mitchell boarded Woodland Dream in exchange for legal services provided by Mr. Johnston [D.E. 20 at 77-78], and Agent Moutz testified that Mr. Johnston used Woodland Dream as collateral for a loan.

[D.E. 20 at 23-24]. Furthermore, the Banks do not object to Judge Wier's finding that a substantial probability of the United States prevailing on the issue of forfeiture exists. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

The Banks object to Judge Wier's finding that the property showed a substantial probability of decreasing in value or that the cost of maintenance of the property exceeded its value. [D.E. 13 at 5]. Based upon the evidence presented at the evidentiary hearing, the Court agrees with the Magistrate Judge that there is a substantial probability that Woodland Dream's value will depreciate so drastically that she would effectively be unavailable for forfeiture. *See* 21 U.S.C. § 853(e)(1)(B)(i).

In assessing whether Woodland Dream would be "unavailable for forfeiture" the Court believes that borrowing the standards for entering sale in the Supplemental Rules of Civil Procedure, while not controlling, provide guidance to the Court. Specifically, the two standards at issue here are "whether the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action" and "whether the expense of keeping the property is excessive or is

disproportionate to its fair market value." Supp. R. Civ. Pro. G(7)(b)(i)(A)-(B).

A review of Woodland Dream's health shows that her value is subject to deterioration such that she may, effectively, become unavailable for forfeiture. By all accounts, Woodland Dream is a mare that has exhibited multiple reproductive issues. Woodland Dream's first foal, Snow Fairy, was a champion racehorse. [D.E. 19 at 58-59]; [D.E. 20 at 46]. Following this successful foal, Woodland Dream had a period from 2008 to 2011 where she did not produce a foal. [D.E. 20 at 32]. According to argument at the motion hearing before this Court, it was at this time that Woodland Dream was simply given away by Claiborne Farms to a Mr. Cook and then from Mr. Cook to the Banks. Thus, at one point in her life, Woodland Dream was literally considered worthless.

After aborting the foal she was carrying in February 2011 [D.E. 19 at 13], Dr. Rolf Embertson performed a surgery on Woodland Dream to repair a defect in her cervix and a perineal body defect. [D.E. 19 at 69]. Following that surgery, in 2012, it took four breeding cycles for Woodland Dream to "catch". [D.E. 19 at 27]. However, she did successfully carry that foal, and this Court recently entered an agreed order selling the foal out of Flower Alley. [D.E. 27].

Testimony at the evidentiary hearing shows the significance of these reproductive issues as they relate to Woodland Dream's

9

value. Doug Cauthen, who owns a consulting business in the horse industry and former President of Windstar Farms, testified that Woodland Dream's risks in terms of foaling are "[b]ased on her history[,] . . . certainly worse than the average mare." [D.E. 20 at 55]. He further testified that if she were to slip the current foal it would hurt her value because she would lose the foal, which is part of her value, and it would harm her reputation. [D.E. 20 at 61]. Moreover, "[i]f you're 11 years old, you're worth X. If you're 12 years old, you're worth 10, 20 percent less . . . [Woodland Dream's] in that window where she's not old. She's just on the cusp." [D.E. 20 at 32].

Robert Waldman, an expert in purchasing horses, testified that Woodland Dream "presents too great of a risk to hold on to her and reasonably expect to get more foals out of her." [D.E. 19 at 48]. Mr. Waldman further testified that if Woodland Dream were to abort the foal she is currently carrying "you would be hard pressed to find anybody who would pay anything other than a bargain basement price to try to buy her." [D.E. 19 at 51].

Additionally, while the testimony may not show that the costs of maintaining Woodland Dream are "disproportionate to her fair market value," the specific day-to-day maintenance requirements of Woodland Dream may cause the costs to be considered "excessive". *See* Supp. R. Civ. P. G(7)(b)(i)(B) ("[T]he court may order . . . the property sold if the expense

10

of keeping the property is excessive or is disproportionate to its fair market value."). Dr. Jennifer Smallwood, the former veterinarian of Woodland Dream, testified that, for Woodland Dream, the veterinarian costs "would definitely be higher than the average broodmare." [D.E. 19 at 28]. She also testified that there is a possibility the mare has Cushings disease, although it is not clear from the record what expenses might arise as a result of that condition or how it might affect the mare's value. [D.E. 19 at 21-23].

Sharon Mitchell, who previously boarded Woodland Dream, testified that when Woodland Dream left her farm "it was a little bit of a relief maybe . . . because she was . . . something that you had to watch literally 24/7." [D.E. 20 at 73]. While under her care, Woodland Dream was on a low starch diet, low sugar diet, and was mentally fragile. [D.E. 20 at 71]. She expounded on Woodland Dream's mental state by stating that "[y]ou had to be very stringent about who she liked, who she didn't, or she would just run the field non-stop, and it wouldn't matter what you did. . . . [S]he was also a little difficult to work with hands on as well, as well as going to the breeding shed." [D.E. 20 at 71].

Ralph Kinder, a claimant in the action who, admittedly, hopes to sell the mare, testified that he would recommend selling Woodland Dream because "she's a high-risk mare, high

11

maintenance, and the daily – daily care of her." [D.E. 20 at 100]. He further stated that Woodland Dream had to have a companion with her at all times and that the horse was high strung and problematic. [D.E. 20 at 100].

Simply put, the age, reproductive history, and countenance of Woodland Dream present a great risk to her value. If Woodland Dream aborts her current foal or fails to catch in the next breeding season, her value, according to the testimony, will plummet. If this happens, the mare could again simply have to be given away. This would effectively render Woodland Dream unavailable for forfeiture because an asset worth nothing cannot be said to be "available." As Woodland Dream may be worth more today than at any other point going forward, the time to take advantage of her value is now. This mare presents a substantial risk of deterioration based on her reproductive history, and her specialized maintenance costs, which must eventually be paid, further decreasing her ultimate value, are borderline excessive. Therefore, under § 853(e)(1) the Court finds a substantial probability that Woodland Dream will be "made unavailable for forfeiture." 21 U.S.C. § 853(e)(1)(B)(i).

Before ordering an interlocutory sale, the Court must also determine that "the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered."

12

21 U.S.C. § 853(e)(1)(B)(ii). Converting the horse into a liquid asset does not create a hardship upon the Banks and does nothing to change their interest in the property. Any interest the Banks may have in the horse will be preserved in the substitute res garnered by the sale.[1] That Woodland Dream is a unique asset does not create enough a hardship to prevent the interlocutory sale. *See United States v. King*, No. 10-Cr-122, 2010 WL 4739791, at *3 (S.D.N.Y. Nov. 12, 2010) ("The defendant is thus protected because the sale of the horses would prevent further deterioration in the value of the assets and the proceeds would be preserved."). Furthermore, the Banks' have not objected to this portion of Judge Wier's report and recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Based on the foregoing, the Court agrees with Judge Wier's finding that the need to preserve the property outweighs any hardship upon the Banks.

The Banks final objections to the report and recommendation are that Judge Wier improperly relied on the filing of a

---

[1] The Banks have not suggested that there is any reason they would be precluded from purchasing Woodland Dream at public sale. To the extent they are confident in their ownership interest in some portion of the mare and the ability of Woodland Dream to be profitable in the future, they may purchase the mare at public sale for market value.

13

complaint for forfeiture in rem and that Judge Wier inappropriately relied on the testimony of FBI Agent Moutz. [D.E. 13 at 5, 6]. Judge Wier did not improperly rely on the filing of the civil forfeiture in rem complaint. Judge Wier merely stated that, based on the filing of the complaint, "it seems particularly appropriate to look to Rule G(7) for guidance." [D.E. 12 at 11]. Judge Wier only borrowed from Rule G(7) to guide him in his analysis under § 853(e) and did not give it controlling weight.

Judge Wier did not rely on Agent Moutz's testimony in coming to his decision to enter the order of Woodland Dream. Judge Wier's references to Agent Moutz's testimony were a summary of what happened at the hearing. Moreover, Agent Moutz was allowed to testify at the hearing, but counsel was not permitted to question Agent Moutz on the issue of ownership. Simply because the Banks were not permitted to delve into a line of questioning not relevant to the purpose of the evidentiary hearing does not mean that Judge Wier was precluded from considering Agent Moutz's testimony. Thus, the Banks' final two objections are meritless, and Judge Wier did not err in ordering the sale of Woodland Dream.

**IV. Conclusion**

The Court finds authority in 21 U.S.C. § 853(e) for ordering the pre-indictment interlocutory sale of forfeitable

14

assets. Based upon the reproductive history of Woodland Dream, this mare presents a great risk of declining in value because another slip or failure to catch would drastically decrease this mare's value. As Woodland Dream was once valued at zero, the ever-present danger of another issue with her reproductive health presents a substantial probability that she will effectively be rendered unavailable for forfeiture.[2]

Accordingly, **IT IS ORDERED**:

(1) that the Report and Recommendation of the Magistrate Judge [D.E. 12] be, and the same hereby is, **ACCEPTED** and **ADOPTED**;

(2) that the Banks' Motion to Appeal the Order of the Magistrate Judge [D.E. 13] be, and the same hereby is, **GRANTED IN PART,** insofar as the Court has considered their arguments and undertaken a review of the Magistrate Judge's report and

---

[2] The Court reminds the parties that the Magistrate Judge entered the contested order in 5:13-mj-5181-REW just after a forfeiture action in rem, Civil Action No. 5:13-cv-279-JMH, was commenced against the same res which is the subject of 5:13-mj-5181-REW. There has yet to be filed a motion for interlocutory sale pursuant to Supplemental Rule G(7)(b)(i) in Civil Action No. 5:13-cv-279-JMH. While the Court has considered, as it said it would in its Order of September 26, 2013 [D.E. 5], Supplemental Rule G(7)(b)(i) in reviewing the report and recommendation of the Magistrate Judge, the relief ordered remains subject to the limitations of 21 U.S.C. § 853 and will expire 90 days from the date of its entry, October 28, 2013, unless that time is extended. Should any of the parties wish to file a motion under Supplemental Rule G(7) and ask this Court to make a determination under that rule, they are free to do so in the future.

recommendation, and **DENIED IN PART,** insofar as the Court has accepted and adopted the report and recommendation of the Magistrate Judge and declines to reach the conclusion that the Banks urge.

(3) That the mare Woodland Dream shall be sold in a sale conducted in accordance with the mechanics and procedures of Supplemental Rule of Civil Procedure G(7). To the extent the parties can agree to sale procedures and proceed allocation or disbursement, they may tender a proposed agreed order for the Court's consideration. If the parties cannot agree on the mechanics of sale, they may bring any disputes to the Court for resolution. Consistent with Rule G(7)(b)(iv), sale proceeds are a substitute res subject to forfeiture in place of the property that was sold, and the proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture litigation.

(4) The Clerk shall **FILE** a copy of this Memorandum Opinion and Order in the record of 5:13-mj-5181-REW.

This the 24th day of October, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge